UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

HAROLD M. SINGFIELD, JR.,

   Plaintiff,

v.

SGT. CARR,
OFC. PAYNE and
OFC. TURNER,

   Defendants.

Civil Action No. 23-2173-TDC

## MEMORANDUM OPINION

Self-represented Plaintiff Harold M. Singfield, Jr., incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging constitutional violations arising from the alleged use of excessive force against him by Defendants Sergeant April Carr, Officer Jeremy Payne, and Officer Jeffrey Turner. Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, which is fully briefed. In an Order dated February 24, 2025, the Court granted leave for Singfield to file a surreply brief to address new arguments asserted in Defendants' reply brief. Singfield did not file a surreply brief. Having reviewed the briefs and submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be GRANTED.

## BACKGROUND

### I. Use of Force

On July 10, 2020, Singfield was incarcerated at NBCI and assigned to a cell on the upper level of general population in a maximum security unit. In the presently operative Amended Complaint, Singfield alleges that at approximately 8:43 a.m. that day, he had a disagreement with Sergeant Carr about not scheduling him for a "visit" for a second consecutive week. Am. Compl. at 7, ECF No. 8. He asserts that when he stood up to walk away from Sergeant Carr, Officer Payne grabbed his arm. According to Singfield, when he pulled his arm away "out of reflex," Officer Payne pushed past Sergeant Carr, knocking her down, and started repeatedly punching Singfield in the face. *Id.* Singfield further alleges that Officer Turner then rushed in, got behind Singfield, and placed him in a "tight choke hold" so he could not breathe. *Id.* As he started to lose consciousness, Singfield lifted up his arms to try to make space between himself and Officer Payne.

Singfield asserts that Sergeant Carr, while on the ground, grabbed Singfield's legs and twisted them to cause him to fall. After Singfield hit the ground, Defendants allegedly kicked him in the ribs, back, and legs, and Officer Payne allegedly kicked him in the head. Singfield also claims that Sergeant Carr deliberately pulled his pants and underwear down to expose his genitals. Officer Payne and other correctional officers then dragged Singfield down a flight of stairs.

In a declaration, Sergeant Carr asserts that the encounter began because Singfield was observed "violating prison rules by stepping out of bounds" and then refused Officer Turner's order to return to his cell and instead stopped near the bottom of the metal staircase that led to his cell. Carr Supp. Decl. ¶ 3, Reply Ex. O, ECF No. 38-5  Sergeant Carr asserts that when she approached Singfield, he became agitated and would not calm down, and he refused "multiple

direct orders" to go to the top of the stairs, return to his cell, and lock in. *Id.* ¶ 6. As other correctional officers arrived on the scene, Singfield moved further up the steps, gesturing with his hands, and stopped two-thirds of the way up and again refused to move. While Sergeant Carr was positioned directly across from Singfield, on the same step, Officer Payne approached Singfield from a lower step and reached for his arm to restrain him and escort him back to his cell. According to Sergeant Carr, Singfield "immediately and violently responded, pulling away and assaulting" Officer Payne, and attempting to push him over the railing. *Id.* ¶ 7. Sergeant Carr asserts that Singfield, from the higher step, placed Officer Payne in a chokehold. As Sergeant Carr and Officer Turner attempted to intervene, Singfield punched and kicked them and attempted to knock them down the stairs. Eventually, a group of officers pushed Singfield to the landing at the top of the stairs, where Singfield refused multiple orders to "stop resisting" and put his hands behind his back, and instead raised his hands above Officer Payne's head. *Id.* ¶ 9. Officer Payne punched Singfield one time, grabbed his shoulders, and forced him to the ground, and other officers restrained and handcuffed Singfield. Singfield was then brought to his feet and taken down the stairs to a holding cell for medical evaluation.

A surveillance video of the incident, which does not include audio, generally tracks this sequence of events. The video shows the encounter between Sergeant Carr and Singfield on the metal staircase, that when Officer Payne put his arm around Singfield's back, Payne reacted, that an altercation then broke out as multiple officers grabbed onto Singfield to try to gain control of him, and that the group struggled while on the staircase. Eventually, when the correctional officers were able to move Singfield to the top of the staircase, he put his hands up into the air and then was pulled down to the ground. After a brief struggle on the ground, Singfield was handcuffed, brought to his feet, and forcibly escorted down the steps and out of the range of the camera.

3

## II. Medical Care

Singfield alleges that as a result of this incident, he had cracked ribs, a sprained ankle, bruised legs, cuts, and a concussion. Singfield asserts that after the incident he asked Defendants to take him to see medical staff, but each refused to do so. Singfield was taken to the segregation unit. Singfield further alleges that two weeks later, he was examined by medical staff who told him that his ribs were fractured and requested an emergency visit for him. He asserts, however, that the next day, no correctional officer or staff "would take me to medical for the emergency medical visit." Am. Compl. at 9.

Defendants, however, assert that after Singfield was removed from the staircase area, medical staff arrived and attempted to evaluate Singfield, but he refused medical attention. Defendants have submitted a Medical Release of Responsibility form dated July 10, 2020 at 9:17 a.m. and signed by two nurses who attested that Singfield refused a medical assessment and noted that he "appear[ed] physically and mentally stable." Supp. Med. Records at 4, ECF No. 39-1.

Medical records submitted by Defendants also document an assessment conducted on July 23, 2020 by Nurse Kimberlie Ventura noting that Singfield complained of rib pain on his left side resulting from the July 10, 2020 incident and that he requested an x-ray. Although Singfield stated that his left side was "tender to touch," Ventura reported that Singfield had no difficulty getting up on the exam table and moving around. Med. Records at 12, Mot. Ex. A, ECF No. 24. Singfield was given Motrin for pain and information on using a cold compress and pillow for support. Ventura stated that she would discuss the need for an x-ray with the medical provider.

On October 28, 2020, Singfield had a medical visit with a nurse for complaints of sharp pain in his ribs in which she noted that a chest x-ray had been ordered on July 24, 2020 and had not occurred, so she scheduled it for October 29, 2020. On November 2, 2020, Singfield had an

4

x-ray of his chest and left ribs that showed no evidence of acute fracture, dislocation, or abnormality.

Meanwhile, upon evaluation after the incident, Sergeant Carr had an arm and elbow injury, with bruising appearing in those areas and pain in her wrist, Officer Payne had red marks and scratches on his neck and left forearm and neck, and Officer Turner had a red abrasion on his left elbow.

### III.   Disciplinary Process

On July 10, 2020, Singfield received a Notice of Inmate Rule Violation in which he was charged with engaging in a disruptive act, committing assault or battery on staff, and disobeying an order. In the notice, Officer Broadwater reported that he observed Sergeant Carr and Officer Payne attempt to place handcuffs on Singfield, and that Singfield resisted and attempted to push the officers down the staircase. On or about July 16, 2020, Singfield pleaded guilty to the charges and received 90 days of segregation, 30 days of cell restriction, the loss of 180 days of good conduct credits, and the loss of visits for 60 days.

## DISCUSSION

In the presently operative Amended Complaint, Singfield alleges, pursuant to 42 U.S.C. § 1983, violations of the Eighth Amendment to the United States Constitution based on (1) alleged excessive force arising from the July 10, 2020 incident; and (2) an alleged failure to provide adequate medical care following that incident.

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. As grounds, they assert that (1) Singfield failed to exhaust administrative remedies prior to filing suit; (2) pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), Singfield is barred from bringing a constitutional claim because he pleaded guilty at his

disciplinary hearing; (3) Singfield's claims are barred by the statute of limitations; (4) Singfield has failed to provide sufficient allegations and evidence to support his Eighth Amendment claims relating to excessive force and a denial of medical care; (5) Singfield is not entitled to mandamus relief; (6) Defendants are entitled to Eleventh Amendment immunity from claims against them in their official capacities; and (7) Defendants are entitled to qualified immunity.

I.   **Legal Standards**

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Defendants have attached numerous declarations and exhibits with their Motion. Courts must treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court

is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been provided, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). In opposing the Motion, Singfield has substantively addressed Defendants' arguments without requesting discovery, and he has not submitted a surreply brief even when provided with an opportunity to file one to address new arguments in Defendants' reply brief. Where Singfield has not met the standard to require discovery before resolution of the Motion, the Court will construe Defendants' Motion as a motion for summary judgment for purposes of the arguments requiring consideration of the submitted declarations and exhibits.

Under Rule 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with "all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477

U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II. Procedural Claims

Although Defendants assert several procedural arguments for dismissal or summary judgment, the Court will not grant the Motion on these bases. Defendants argue that Singfield failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), but to the extent that they are correct that Singfield may not have pursued all available appeals under the Administrative Remedy Procedure ("ARP") applicable in Maryland prisons, Md. Code Regs. § 12.02.28.02(B)(1) (2025), Singfield's ARP complaint was procedurally dismissed and placed under investigation by the Intelligence and Investigative Division ("IID"), likely because it related to a use of force. The United States Court of Appeals for the Fourth Circuit, however, has held that when an ARP complaint is procedurally dismissed because the matter is the subject of an IID investigation, the ARP process is "unavailable," and the inmate "need not seek additional review of that decision." *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023).

Defendants' statute of limitations argument does not clearly succeed because it fails to account for the fact that the time period during which Singfield had a pending ARP complaint may toll the limitations period. *See Battle v. Ledford*, 912 F.3d 708, 719 (4th Cir. 2019). Finally, Defendants' assertion that Singfield's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), is unpersuasive. Although *Heck* bars a § 1983 claim if a favorable judgment would "imply the invalidity of his criminal conviction," *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 391 (4th Cir. 2014), and this rule similarly bars such a claim if it would imply the invalidity of a prison disciplinary conviction, *Moskos v. Hardee*, 24 F.4th 289, 295–96 (4th Cir. 2022), it is

not clear that a finding that there was excessive force or a failure to provide medical attention would be inconsistent with Singfield's plea of guilty to disciplinary charges of disobeying an order or engaging in assault or battery on an officer. The guilty plea at the disciplinary hearing may have relevance to the claim of excessive force, *see infra* part III, but it is not a bar to this action. The Court therefore considers Defendants' arguments based on the merits.

### III.   Excessive Force

Defendants also assert that Singfield has failed to state a claim or provide sufficient evidence of excessive force in violation of the Eighth Amendment. Because Singfield is an inmate alleging excessive force occurring in a prison, his § 1983 claim arises under the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must establish both that (1) the injury or deprivation inflicted was objectively serious enough to constitute a violation; and (2) the prison official subjectively "acted with a sufficiently culpable state of mind." *Williams*, 77 F.3d at 761.

On the objective element, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam). "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). However, an Eighth Amendment violation can occur even if a correctional officer's action did not cause serious injury. *Id.* at 38. "When prison officials maliciously and sadistically use force to cause harm,

contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

On the subjective element, an inmate must show that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" and thus "inflicted unnecessary and wanton pain and suffering," rather than "in a good faith effort to maintain or restore discipline." *Id.* at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In assessing this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat"; and "(4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

Viewing the evidence most favorably to Singfield, the objective evidence supports a finding that a "nontrivial" amount of force was used against Singfield. *Wilkins*, 559 U.S. at 39. His excessive force claim, however, fails at the subjective component. First, Singfield has not disputed Sergeant Carr's account of how the encounter began—that he was not authorized to be out of his cell near the staircase, and that he refused to comply with a direct order to return to his cell. The video also clearly shows that Singfield was not compliant with verbal and physical direction by officers to move to the top of the stairwell and back to his cell, even when multiple officers responded in an apparent show of force intended to convince him to comply.

Singfield also acknowledges in the Amended Complaint that when Officer Payne grabbed his arm, he reacted physically by pulling his arm away in a manner that is consistent with Defendants' account of how the physical altercation began, consisting of Singfield pulling away from Officer Payne and assaulting him. Significantly, Singfield pleaded guilty to rule violations including disobeying an order, engaging in a disruptive act, and committing an assault or battery

on correctional staff. These facts support the conclusion that Defendants were justified in engaging in some use of force to control Singfield.

At that point, the video shows that Defendants were trying to control and restrain Singfield, and that Singfield was resisting their efforts. In light of the resistance, and the fact that the encounter began in the middle of the staircase, with most of the officers on lower steps and therefore in a precarious location, the amount and duration of physical force used to control Singfield, move him to a safer location for everyone at the top of the stairs, and then to handcuff him was generally consistent with a reasonable effort "to maintain or restore discipline." *Hudson*, 503 U.S. at 6. Where Singfield has pleaded guilty to committing an assault or battery on the correctional officers, and where there is evidence of minor injuries to the officers, the Court cannot find based on the video, which does not show the more serious forms of force described by Singfield, that the amount of force used was unreasonable. Finally, the amount of force used to bring Singfield down the stairs while handcuffed also appears reasonable under the circumstances, and Singfield does not allege that he was subjected to further force after he was escorted from the scene. Thus, based on the combination of the undisputed account of how the encounter began, Singfield's admission that he committed assault or battery during this incident, and the video of the encounter, the Court finds that there is insufficient evidence to support Singfield's excessive force claim. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (granting summary judgment based in part on a video of the event that demonstrated that there was no genuine issue of material fact). The Motion will therefore be granted as to the claim of excessive force asserted against Defendants.

### IV. Medical Care

Defendants also seek dismissal or summary judgment on Singfield's claim that Defendants violated his Eighth Amendment rights when they failed to take him to the medical unit following the incident. In order to state an Eighth Amendment claim for a failure to provide medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko*, 535 F.3d at 241.

Objectively, the medical condition at issue must be serious. *Hudson*, 503 U.S. at 9. A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this

standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.*

Singfield alleges that Defendants refused his requests to have him taken to the medical unit after the incident and argues that medical care was necessary because two weeks later, he was told by "someone from medical" that his ribs were fractured and an emergency medical visit would be scheduled, but "no staff/officer" would take him to medical the next day for the visit. Am. Compl. at 9. He also asserts that in addition to fractured ribs he had a sprained ankle, bruised legs, a concussion, and a loss of weight.

The claim of a failure to provide access medical care after the incident is refuted by the Release of Responsibility form signed by two nurses attesting that he was offered but declined medical care after the event. Notably, Singfield disputed only the lack of signatures on the initially produced form, which has since been cured by the submission of the signed form, and did not dispute the contents of the nurses' account. Moreover, the medical records do not support the conclusion that his condition was such that Defendants would have been subjectively aware of his need for immediate medical attention. The nurses who saw Singfield and completed the Release of Responsibility form noted that Singfield appeared "physically and mentally stable." Supp. Med. Records at 4.

Defendants have submitted medical records that do not support Singfield's claim that he had a serious medical need immediately following the incident. At a subsequent medical visit on July 23, 2020, Singfield complained of left side rib pain, yet he had no difficulty getting up on the exam table and moving around. There is no further record that Singfield complained of chest pain until over three months later at an appointment on October 28, 2020, which was followed by a chest and left rib x-ray on November 2, 2020 that found no evidence of any abnormalities. With

the passage of time from the incident to the date of the x-ray, these records do not definitively establish that Singfield never had a rib injury, but they also show that there is insufficient evidence that Singfield had such a significant injury that Defendants, at the time of the incident, were subjectively aware that he had an injury that required immediate attention.

Finally, although Singfield complains of delays in receiving appointments to see medical personnel after the date of the incident, he has neither alleged nor provided evidence showing that Defendants, as opposed to other correctional or medical staff, were responsible for arranging for him to see medical staff and failed to do so despite knowledge of injuries necessitating such treatment. Singfield asserts in his brief, rather than in the Amended Complaint, that he had an emergency medical appointment scheduled for July 11, 2020, the day after the incident, and that he was not taken to that appointment. Even if the Court were to consider this new allegation, Singfield has not alleged which defendant, if any, was made aware of this appointment and failed to arrange for him to be brought to it. Further, since Singfield was moved to administrative segregation the day of the incident, it is not even clear whether any of Defendants was on duty in that unit going forward. Because Singfield has failed to allege or establish sufficient facts to support his Eighth Amendment claim based on a denial of medical care, the Court will grant summary judgment to Defendants on this claim.

Based on this conclusion, the Court need not and will not address Defendants' remaining arguments in support of the Motion.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED. A separate Order shall issue.

Date: March 25, 2025

THEODORE D. CHUANG
United States District Judge